PEOPLE *v.* SCHNOOR.

BRIBERY—SUFFICIENCY OF EVIDENCE.
> In prosecution for bribery, evidence of defendant's conduct lead-
> ing to conclusion that he was *particeps criminis* justified
> verdict of guilty, in absence of explanation of said conduct.

Error to Kent; Cross (Orien S.), J., presiding. Submitted January 16, 1930. (Docket No. 137, Calendar No. 34,420.)   Decided March 7, 1930.

Louis W. Schnoor was convicted of bribery. Affirmed.

*Wilber M. Brucker,* Attorney General, and *Jay W. Linsey,* Special Prosecuting Attorney, for the people.

*Willard McIntyre,* for defendant.

BUTZEL, J.  Respondent was convicted of bribery. The indictment set forth that he, together with Patrick W. O'Connor, William G. O'Connor, Lee C. Rockwell, and Archie W. Baxter, did bribe one Oscar B. Frye, a member of the city council of the village of East Grand Rapids, in order to corruptly secure paving contracts for laying asphalt in said village.   The indictment also charged respondent with attempt to bribe. Rockwell, William G. O'Connor, Baxter, Frye, and respondent were tried separately.   Rockwell pleaded guilty, and William G. O'Connor was found guilty of bribery; Baxter was found guilty of an attempt to bribe, and Oscar B. Frye of having accepted a bribe.

The questions in this case are almost identical with those raised in *People* v. *Baxter,* 245 Mich. 229, and *People* v. *Frye,* 248 Mich. 678. The only assignment of error that materially differs from those in the aforesaid cases is that the verdict of guilty was based upon prejudice and was against the clear weight of the evidence. The testimony shows that respondent was interested in some way with P. W. O'Connor & Company who sought the paving contracts for which a bribe was given. It was shown that he was closely associated with the O'Connors, either as agent, employee, partner, or in some capacity, in obtaining the paving contracts through bribery. He first found out for the O'Connor firm that there was paving to be done and that there would be contracts awarded. He first told Rockwell (the "go-between") that money would be paid for the contract, and he was told by Rockwell that Frye, the village councilman, "could be reached" through one Baxter. Respondent then saw Baxter and told him that money would be paid for the contracts. He was told by Baxter that the latter would see Frye, and subsequently Baxter told respondent in the presence of the O'Connors that Frye was willing to "go on with the deal." Respondent was in constant communication with Rockwell, and frequently was accompanied by William G. O'Connor. In the presence of the latter and Patrick W. O'Connor and Rockwell, at the home of Patrick W. O'Connor the yardage of the paving based on the estimates secured by Rockwell was figured up by respondent, and the amount of the money to be paid agreed upon. The respondent and the O'Connors went together in the same automobile to Rockwell's home for the purpose of paying the bribe money. Respondent alighted from the car near his home just

prior to the turning over of the money at Rockwell's home. The following day respondent and the two O'Connors met Frye at Baxter's store where the situation was discussed, and the fear expressed by Baxter and Frye that Rockwell would keep the money. Respondent and O'Connor returned later the same day to see Baxter. There is additional testimony to show that respondent was an active participant in a large part of the proceedings, though his relation to the O'Connor firm and his exact interest in the contracts and the bribe money were not shown. It is not claimed that he was present at the exact moment when the money was turned over. He was present immediately before this was done and shortly thereafter when, as part of the same transaction, the situation was discussed.

Respondent did not take the witness stand; there was no legal obligation on his part to do so. This nevertheless did not deprive him of the right to explain his conduct. Without any explanation on his part, or by anyone else, we can only conclude from the facts disclosed by the record that he was a *particeps criminis*. The jury was fully justified in so finding. The other errors claimed have been fully discussed in *People* v. *Baxter, supra,* and *People* v. *Frye, supra.*

Conviction affirmed.

WIEST, C. J., and CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred. McDONALD, J., did not sit.